O

# United States District Court
# Central District of California

| | |
|---|---|
| VERIFIED NUTRITION, LLC, a Nevada limited liability company; FRED BUCKLEY, an individual,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>ERIC SCLAR, an individual; CAROLINA SCLAR, an individual; NHS GLOBAL DISTRIBUTORS, INC., a California corporation; and DOES 1 to 10, inclusive,<br><br>　　　　　　Defendants. | Case № 2:17-cv-07499-ODW (RAO)<br><br>**ORDER DENYING PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [11]; AND SETTING ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |

## I.   INTRODUCTION

Plaintiffs Verified Nutrition, LLC and Fred Buckley filed their Complaint on October 13, 2017, alleging causes of action for: 1) copyright infringement; 2) false advertising; 3) defamation; 4) trade libel; 5) unfair competition; and 6) intentional infliction of emotional distress. (ECF No. 1.)

Before the Court is Plaintiffs' Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should

Not Issue to enjoin Defendants Eric Sclar, Carolina Sclar, (collectively the "Individual Defendants") and NHS Global Distributors, Inc. ("NHS") from disseminating false and misleading information about Plaintiffs and Plaintiffs' products on Defendants' websites. (Appl., ECF No. 11.)

Plaintiffs served their Complaint on NHS on October 16, 2017 (ECF No. 12), and served the pending Application on NHS on October 18, 2017. (ECF No. 13.) On October 18, 2017, Plaintiffs' counsel called counsel for Defendant NHS and gave notice of the date and substance of Plaintiffs' Ex Parte Application. (Declaration of Daniel Silverman ("Silverman Decl."), ¶ 12, ECF No. 11-1.) Counsel for NHS indicated that it would oppose the Application, but has not done so. (*Id.*) Plaintiffs have not filed proofs of service as to the Individual Defendants.

For the following reasons, the Court **DENIES** the Application, but **ORDERS** Defendants to show cause as to why a preliminary injunction should not issue, as set forth in this Order.[1]

## II. FACTUAL BACKGROUND

Verified Nutrition, LLC is a limited liability company registered in Nevada. (Declaration of Fred Buckley ("Buckley Decl.") ¶ 3, Ex. A, ECF No. 11-2.) Buckley is the founder and manager of Verified Nutrition. (*Id.*) Verified Nutrition sells ProstaGenix, which is "an all-natural supplement with a proprietary form of *Beta-sitosterol* (called BetaRexin, which is exclusively available to Verified Nutrition). (*Id.* ¶ 4.) According to Plaintiffs, "*Beta-sitosterol* has been shown through published clinical trials to be the most effective ingredient for improving prostate health." (*Id.*) Plaintiffs submit articles from medical journals, including *The Lancet*, the *British Journal of Urology*, and *BJU International*, which Plaintiffs claim establishes the efficacy of the active ingredient in ProstaGenix. (*Id.* Ex. B, ECF No. 11-3.)

---

[1] After carefully considering the papers filed in support of the application, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Defendants produce and sell a competing prostate supplement called Prostate Miracle ® Advanced Formula ("Prostate Miracle"). (Buckley Decl. ¶ 7.)

Plaintiffs primarily advertise ProstaGenix through a long form infomercial featuring Larry King, which is displayed on Verified Nutrition's website, http://www.prostatereport.com ("Prostate Report"). (*Id*. ¶ 5.) Prostate Report also provides reviews of various prostate supplements on the market, including Verified Nutrition's product, ProstaGenix, and Defendants' product, Prostate Miracle. (*Id*. ¶ 7.) Buckley also publishes a magazine called "The Men's Guide to Prostate Supplements," which provides similar reviews. (*Id*. ¶ 6.) Plaintiffs disclose on their website that Buckley is the inventor of ProstaGenix, writes the reviews on the website, and that Verified Nutrition sponsors the website. (*Id*. ¶ 8.) Buckley claims he has "spent approximately $150,000 to have five reputable and independent laboratories conduct more than 280 laboratory tests on over 150 different prostate supplements." (*Id*. ¶ 7.)

Buckley reviewed Defendants' product on Prostate Review, and determined that his product, ProstaGenix, is superior to Defendants' product, Prostate Miracle, because ProstaGenix contains 824 milligrams of *Beta-sitosterol*, whereas Prostate Miracle only contains 414 milligrams. (*Id*. ¶ 12.) Buckley included Defendants' ingredient list on Prostate Review, but did not otherwise plagiarize anything from Defendants. (*Id*. ¶ 10.)

Defendants began operating three websites sometime in September 2017, entitled http://www.larry-king-prostate-report.com, http://LarryKingProstate.com, and http://www.best-prostate-formulas.com (collectively, "Defendants' Websites"). (*Id*. ¶ 13, Ex. H, ECF No. 11-4.) Defendants' Websites take images directly from the Larry King infomercial displayed on Prostate Report, which advertises ProstaGenix, and superimposes text over them. (*Id*.) Defendants' Websites make many statements about Buckley, Verified Nutrition, Larry King, and ProstaGenix, including, but not limited to: 1) calling ProstaGenix and Buckley's business a "total scam;" 2) claiming

that Verified Nutrition "does not exist;" and 3) calling Buckley a "liar, plagiarist, and conman," a "career huckster," a "slimeball," a "serial fraudster," a "career con artist," a "despicable schmuck," and a "sociopath." (*Id.*) Defendants' Websites also accuse Buckley of pretending to be an "independent, unbiased 3rd party" reviewer, "fraudulently selling one bogus product after another, since 2005," and having a "long history of defrauding consumers." (*Id.*)

Plaintiffs claim these statements are false, and have had an adverse effect on their sales of ProstaGenix, and the goodwill of Verified Nutrition and Buckley, generally. (*Id.* ¶ 16.) Buckley conducted Google searches for the search term "Larry King prostate," among others, which returned links to Defendants' Websites, and a YouTube video, which states, among other things, that "In the Larry King Prostate report, Larry King stages a fake interview with career huckster Fred Buckley and partner in crime, wife Corinne Buckley." (*See id.* ¶¶ 14–25.) The YouTube video is embedded on Defendants' Websites. (*Id.* ¶¶ 16–17.)

On October 2, 2017, Plaintiffs sent a cease and desist letter to Defendants regarding the defamatory and misleading statements described above. (Silverman Decl., ¶ 2, Ex. A.) However, Defendants' Websites are still active and include the same statements. Plaintiffs seek to enjoin Defendants from continuing to disseminate this false information.

### III.  LEGAL STANDARD

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952). The standard for granting a temporary restraining order "is identical to the standard for issuing a preliminary injunction." *Brown Jordan Intern. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002).

Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive relief in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, the plaintiff must establish: 1) a likelihood of success on the merits; 2) a likelihood that he will suffer irreparable harm if the preliminary relief is not granted; 3) that the balance of equities tips in his favor; and 4) that the injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of the irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted). "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

Plaintiffs assert seven causes of action in the Complaint, but move for this temporary restraining order on the basis that they are likely to prevail on their claims for false advertising, defamation, trade libel, and unfair competition. (Appl. 11.) Plaintiffs are not required to demonstrate they are likely to prevail on all of their claims to meet their burden. *See e.g.*, *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 983 (N.D. Cal. 2008) (granting preliminary injunction where plaintiffs showed likelihood of success on only some of their ten claims).

### 1. False Advertising

To prove false advertising under 15 U.S.C. section 1125(a), a plaintiff must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citing *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990)). "Where the advertisement is literally false, a violation may be established without evidence of consumer deception [and] the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." *Mut. Pharm. Co. v. Ivax Pharm., Inc.*, 459 F. Supp. 2d 925, 933 (C.D. Cal. 2006) (citations omitted).

The false statements complained of here are part of what appears to be an advertising scheme for Defendants' product on Defendants' Websites. (*See* Silverman Decl., ¶¶ 3-4, Ex. B.) Where an advertisement is published on the Internet, it is considered used in interstate commerce. *See TraffisSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 n.3 (9th Cir. 2011). The statements are likely to deceive a substantial segment of Defendants' Websites' audience because consumers would likely be deceived by the statements superimposed over the images advertising Plaintiffs' product. Those allegedly false statements also would likely be material to consumers because the purported purpose of the website is to compare different prostate supplements, and statements that certain reviewers or distributors are fraudsters would be material.

Plaintiffs also submit evidence that the statements made on Defendants' Websites are verifiably false. Verified Nutrition exists as a Nevada limited

1 liability company, disproving the claim that it is a "fake company." (Buckley
2 Decl., ¶ 3, Ex. A.) Buckley and Verified Nutrition also submit evidence that they
3 spent approximately $150,000 in testing the ingredients of prostate supplements to
4 review them on Prostate Report, which goes to the falsity of the statements on
5 Defendants' Websites regarding the fake review process. (Buckley Decl., ¶ 7, Ex.
6 C.) In light of this undisputed evidence, the Court finds that Plaintiffs are likely to
7 prevail on their claim for false advertising.

### 2. Defamation & Trade Libel

A claim for defamation lies where a plaintiff shows that the defendant made a false, defamatory, and unprivileged communication, which injures the plaintiff's reputation or causes special damages. *See* Cal. Civ. Code §§ 45, 46. A "cause of action for trade libel…requires: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages." *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988). As discussed above, Plaintiffs submit evidence that the statements on Defendants' Websites are false, and that Defendants had their own agenda to promote Prostate Miracle, which substantiates Plaintiffs' claim that Defendants know the statements are false. (Buckley Decl., ¶¶ 3, 4, 7, 9, 10, 12, Exs. A–D, G; Silverman Decl., ¶ 3.) Where Defendants' Websites superimpose statements that are, at least according to the undisputed evidence, verifiably false, the statements are not privileged. Further, Plaintiffs claim pecuniary loss as a result of the false statements, and damage to Buckley's reputation as a well-informed purveyor of prostate supplements. (Buckley Decl., ¶¶ 14–26.) The Court finds that Plaintiffs are likely to succeed on these claims.

### 3. Unfair Competition Claim

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law

makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The "unlawful" prong is separate from the "unfair" and "fraudulent" prongs of the UCL, making unlawful conduct independently actionable even if it is not unfair or fraudulent. *Id.* Plaintiffs rely on the predicate legal violations above for their "unlawful" prong claims, which the Court finds sufficient to demonstrate likelihood of success for this claim.

The claim under the "fraudulent" prong of the UCL is also likely to succeed because, as Plaintiffs describe, the statements on Defendants' Websites are likely to deceive the public. *Comm. On Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983), *amended by statute on other grounds as noted in Branick v. Downey Sav. and Loan Ass'n*, 39 Cal. 4th 235, 242 (2006) ("To state a cause of action under these statutes for injunctive relief, it is necessary only to show that 'members of the public are likely to be deceived.'") (citation omitted). The Court addressed why the statements on Defendants' Websites are likely to deceive the public above.

Conduct is "unfair" under the UCL when it significantly harms competition. *See Cal-Tech Comm.*, 20 Cal. 4th at 186. For the reasons discussed above, the Court finds the statements on Defendants' Websites are also likely to significantly harm competition, to the extent they are verifiably false, and likely violate the "unfair" prong of the UCL.

**B. Immediate and Irreparable Injury**

In the context of evaluating whether to grant a temporary restraining order, harm is irreparable where it extends beyond pecuniary injury. *See Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 519 (9th Cir. 1984) ("a party is not entitled to a preliminary injunction unless he or she can demonstrate more than simply damages of a pecuniary nature"); *but see Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."). "[P]laintiff must demonstrate potential harm which cannot be redressed by a legal or

an equitable remedy following a trial. The [temporary restraining order] must be the *only way* of protecting the plaintiff from the harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

Here, Plaintiffs claim irreparable harm to their reputation and also the decline in sales of their product. The decline in sales of Plaintiffs' product is just the type of harm that could be remedied by monetary compensation after a full trial on the merits of Plaintiffs' claims. *See Regents of Univ. of Cal.*, 747 F.2d at 519. Thus, the Court turns to whether the potential harm to Buckley and Verified Nutrition's reputation is sufficient to warrant a temporary restraining order.

"*Winter* tells us that, at minimum, we must consider whether 'irreparable injury is likely in the absence of an injunction,' we must 'balance the competing claims of injury,' and we must 'pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010) (citing and quoting *Winter*, 555 U.S. at 20–21). While courts have granted injunctive relief where a party's reputation is on the line, *see Schussler v. Webster*, No.: 07cv2016 IEG (AGB), 2009 WL 648925, at *8 (S.D. Cal. March 9, 2009) (granting motion for permanent injunction based on reputational harm), the party still must demonstrate that "irreparable injury is likely in the absence of an injunction." *Salinger*, 607 F. 3d at 79.

Many of Plaintiffs' complaints regarding reputational harm rely on the fact that Defendants' Websites are gaining traction on the Internet, and rising in the results when Buckley entered certain search terms on Google, which typically would have resulted in Plaintiffs' websites being on the top of the list. (*See* Buckley Decl. ¶¶ 19–23.) As stated by Buckley, "[i]n order to counter Defendants' false advertising, [Buckley] will be forced to spend significant amounts of money." (*Id.* ¶ 24.) While this money can be recovered after a full opportunity for Defendants to respond to Plaintiffs' claims, Plaintiffs contend that no amount of money could repair the reputational damage caused by Defendants' Websites. (Buckley Decl. ¶ 24.)

Plaintiffs also contend that only 400 people have seen Defendants' YouTube video at the time of filing their Application, and after a period of approximately thirty days. (*Id.* ¶ 19.) The Court appreciates that over time Plaintiffs' reputation may be harmed by the allegedly false information on Defendants' Websites, as more and more people are exposed to the false statements. The Court finds that this factor tips in favor of Plaintiffs.

**C. Balance of Equities & the Public Interest**

The third factor balances potential harm to the plaintiff in the absence of a temporary restraining order with potential harm to the defendant if a temporary restraining order is granted. *Johnson v. Macy*, 145 F. Supp. 3d 907, 920 (C.D. Cal. 2015). "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)).

The Court discussed the potential harm to be suffered by Plaintiffs in its analysis of the potential for immediate and irreparable injury above. The potential harm to Defendants here seems to be limited, given they do not have a right to disseminate allegedly false statements. *See POM Wonderful LLC v. Purely Juice, Inc.*, No.: CV-07-02633 CAS (JWJx), 2008 WL 4222045, at *16 (July 17, 2008). With regard to the public interest, while the public has an interest in not being exposed to false information, currently the public is able to view both Plaintiffs' and Defendants' advertisements regarding their respective prostate supplements, and can come to their own conclusions. Much of the information Plaintiffs use to demonstrate their claims are true and that Defendants' are false, is also available on Plaintiffs' website, Prostate Report, and thus also available to consumers to weigh the parties' claims themselves.

Further, Plaintiffs' counsel maintained that counsel for NHS would oppose this Application, but none of the Defendants have yet appeared in this action. Plaintiffs

still have not filed proofs of service indicating that the individual defendants were ever served with the Complaint or this Application. (*See* ECF Nos. 12–13.) While there is no requirement of formal service of process prior to issuing a temporary restraining order, *see H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012), the Court is troubled by the fact that the Individual Defendants may not be on notice of this action, or this Application. (*See* Silverman Decl. ¶ 12 (providing that notice was given to "counsel for Defendant NHS," but not describing service or notice to the individual defendants).) A court may issue a temporary restraining order without notice, but only if: 1) "specific facts in an affidavit…show that immediate and irreparable injury…will result to the movant before the adverse party can be heard in opposition;" and 2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. Pl. 65(b)(1); *see also American Can Co. v. Mansukhani*, 742 F.2d 314, 321–22 (7th Cir. 1984) (noting that the circumstances where ex parte restraining orders should be issued is "extremely limited" and holding "an ex parte order is proper only when there is no reasonable alternative"). Here, while Plaintiffs appear to have given notice to counsel for NHS, it is unclear whether notice was given to the Individual Defendants, and there is no showing as to why it should not be required. *See* Fed. R. Civ. P. 65(b)(1)(B).

On balance, the Court finds the *Winter* factors weigh against granting a temporary restraining order, because Plaintiffs have not made "a clear showing that [they are] entitled to such relief." 555 U.S. at 22. The Court therefore **DENIES** Plaintiff's Application. (ECF No. 11.)

**D. Order to Show Cause**

While the Court finds Plaintiffs have not met their high burden entitling them to a temporary restraining order, they have demonstrated sufficient evidence warranting an Order to Show Cause, as follows:

**IT IS ORDERED** that Defendants show cause on **October 30, 2017, at 10:00 a.m.**, in the courtroom of the Honorable Otis D. Wright II, located in Courtroom 5D at 350 W. 1st Street, Los Angeles, CA. 90012, why Defendants, and all those under their direction or control or in active concert or participation with it, its respective suppliers, vendors, licensors, licensees, successors and assigns and the officers, directors, employees, agents and representatives thereof (collectively, "Defendants"), should not be preliminarily enjoined from disseminating any false and/or misleading statements, including statements made or displayed on any of their websites, that:

 (1) Verified Nutrition "does not exist";

 (2) Plaintiffs' product, ProstaGenix, is ineffective and "just a cheap imitation of Prostate Miracle" [Defendants' product];

 (3) Prostate Report is a "fake review site" using "fake lab tests" and fake lab reports to review different prostate supplements and to rate ProstaGenix as the top product on the market, and is promoted through what Defendants have styled as the "gang of fraudsters"; and

 (4) Plaintiff Buckley—the founder and President of Verified Nutrition—is, among other derogatory claims, "a liar, plagiarist, and con man" as well as a "sociopath" who publishes plagiarized and "fake review magazines in connection with promoting his business and ProstaGenix.

**DEFENDANTS ARE FURTHER ORDERED** to show cause why they should not be preliminarily enjoined from disseminating any false and/or misleading statements, including statements made or displayed on any of their websites, regarding:

 (1) Plaintiffs' business operations;

 (2) Plaintiffs' prostate supplement, ProstaGenix;

 (3) Plaintiffs' testing methods and results, as published in Plaintiffs' website or Plaintiffs' magazines; or

(4) Plaintiffs, their website, their business, their product or their magazine, to any person or entity, including to distributors, customers, potential customers, or to any persons or entities involved in or having any relation to the dietary supplement industry.

Should Defendants wish to submit briefing in advance of the hearing on the Order to Show Cause, they must do so on, or before, **9:00 a.m. on October 27, 2017**. Plaintiffs shall not file any responsive pleadings, but may address any arguments raised in Defendants' briefing at the hearing.

## V. CONCLUSION

For the reasons set forth above, the Court finds as follows:

1. On balance, the Court finds the *Winter* factors weigh against granting a temporary restraining order, and therefore **DENIES** Plaintiffs' Application without prejudice (ECF No. 11);
2. The Court **ORDERS** Defendants to **SHOW CAUSE**, as set forth above, on **October 30, 2017, at 10:00 a.m.;**
3. Defendants may submit briefing in response to Plaintiffs' Application on, or before, **October 27, 2017, at 9:00 a.m.**;
4. The Court **ORDERS** Plaintiffs to serve Defendants with a copy of this Order as soon as reasonably possible, but no later than October 25, 2017.

**IT IS SO ORDERED.**

October 23, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**